UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLANTE CONSULTING LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>FORD MOTOR COMPANY,<br><br>                Defendant. | Civil Action No.: 23-cv-2475<br><br>COMPLAINT<br><br>JURY DEMANDED |

Plaintiff Plante Consulting LLC d/b/a Premier Ford of Bay Ridge ("Bay Ridge Ford"), by and through its counsel ArentFox Schiff LLP, as and for its Complaint against Defendant Ford Motor Company ("Ford") alleges as follows:

**PRELIMINARY STATEMENT**

1. Bay Ridge Ford sues Ford for its violation of Sections 463(2)(r), (gg), and 466(1) of New York's Franchised Motor Vehicle Dealer Act. Veh. & Traf. L. § 460 *et seq.*, (the "Dealer Act").

2. Bay Ridge Ford owns and operates a successful Ford dealership in Brooklyn. Despite the fact that Bay Ridge Ford is a strong performer, Ford has refused to provide a continuing sales and service agreement to Bay Ridge Ford.

3. Ford states that it will not provide a continuing sales and service agreement to Bay Ridge Ford because of its purported inability to achieve performance standards set by Ford.

4. However, these performance standards violate the Dealer Act, and therefore cannot be used as reasons to refuse to provide Bay Ridge Ford with a continuing sales and service agreement.

1

5.      Generally, Ford's unlawful performance standards fail to take into account the unique characteristics of Bay Ridge Ford's market.

6.      Bay Ridge Ford has suffered and continues to suffer harm as a result of Ford's unlawful actions.

7.      As a remedy to Ford's conduct, Bay Ridge Ford seeks: (a) injunctive and declaratory relief declaring that that Ford's sales efficiency and customer satisfaction index metrics are unlawful performance standards and enjoining Ford from using them for any purposes in evaluating Bay Ridge Ford's sale and service performance; (b) Bay Ridge Ford's attorney's fees and costs; and (c) any other relief this Court deems just and proper.

## PARTIES

8.      Bay Ridge Ford is a limited liability company organized and existing under the laws of the State of New Mexico with its principal place of business located at 612 86th Street, Brooklyn, New York.

9.      Bay Ridge Ford is a "franchised motor vehicle dealer" as defined in § 462(7) of the Dealer Act and, along with Ford, are parties to a Ford Dealer Sales and Service Agreement (the "Bay Ridge Ford Dealer Agreement").

10.     The Bay Ridge Ford Dealer Agreement is a "franchise" as that term is used in Dealer Act § 462(6).

11.     Ford is a corporation organized and existing under the laws of the State of Delaware with its headquarters located at 1 American Road, Dearborn, MI 48126.

12.     Ford manufacturers and distributes Ford and Lincoln brand vehicles through its network of franchised dealers throughout the United States, including Bay Ridge Ford.

13.     Ford is a "franchisor" under § 462(8) of the Dealer Act.

## JURISDICTION

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000 inclusive of interest and costs.

15. This Court has personal jurisdiction over Ford pursuant to 18 U.S.C. § 1965(a). At all times material to this action, Ford operated, conducted, engaged in or carried on a business venture and conducted extensive business dealings in this State by selling Ford motor vehicles and other products within the State of New York. Ford has committed the unlawful acts described below in this State.

16. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that jurisdiction is founded solely on the basis of diversity, and Ford, by the virtue of its systematic and continuous business contacts in this District, including its contacts with Bay Ridge Ford, which has its principal place of business in this District.

## THE DEALER ACT

17. The legislative purpose behind the Dealer Act is to "regulate motor vehicle manufacturers, distributors and factory or distributor representatives and to regulate dealers of motor vehicles… in order to prevent frauds, impositions and other abuses upon its citizens and to protect and preserve the investments and properties of the citizens of this state." Dealer Act § 460.

18. The Dealer Act proscribes certain conduct by franchisors as unlawful and as unfair business practices. The prohibitions of the Dealer Act govern "notwithstanding the terms of any franchise contract." Dealer Act § 463(2). In addition, the Dealer Act supplements, rather than supplants, any common law rights that motor vehicle dealers have, as shown by the language of the Dealer Act and the unambiguous legislative intent behind the Dealer Act.

3

19. The Dealer Act prohibits certain acts by franchisors like Ford.

20. Section 463(2)(v) of the Dealer Act provides:

> [It shall be unlawful for any franchisor] [t]o use a CSI (customer satisfaction index) or other system measuring a customer's degree of satisfaction with a franchised motor vehicle dealer as a sale or service provider unless any such system is designed and implemented in such a way that it is fair and equitable to both the franchisor and the franchised motor vehicle dealer. In any dispute between a franchisor and a franchised motor vehicle dealer the party claiming the benefit of the system as justification for acts in relation to the franchise shall have the burden of demonstrating the fairness and equity of the system both in design and implementation in relation to the pending dispute. Upon request of any franchised motor vehicle dealer, a franchisor shall disclose in writing to such dealer a description of how that system is designed and all relevant information pertaining to such dealer used in the application of that system to such dealer.

21. Section 463(2)(gg) of the Dealer Act provides:

> [it shall be unlawful for any franchisor] [t]o use any unreasonable, arbitrary, or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement. Before applying any sales, service or other performance standard to a franchised motor vehicle dealer, a franchisor shall communicate the performance standard in writing in a clear and concise manner.

22. Section 466(1) of the Dealer Act provides:

> It shall be unlawful for any franchisor directly or indirectly to impose unreasonable restrictions on the franchised motor vehicle dealer relative to …right to renew or termination of a franchise,…compliance with subjective standards and assertion of legal or equitable rights with respect to its franchise or dealership.

23. Finally, Section 469 of the Dealer Act creates a private right of action for injunctive relief and damages and provides for the award of attorney's fees:

> A franchised motor vehicle dealer who is or may be aggrieved by a violation of this article shall be entitled to sue for, and have, injunctive relief and damages in any court of the state having jurisdiction over the parties. In any such action or proceeding, the court may award necessary costs and disbursements plus a reasonable attorney's fee to any party.

4

## FACTUAL ALLEGATIONS

24. Bay Ridge Ford is a successful Ford dealership located in Brooklyn, New York.

25. Bay Ridge Ford and Ford are parties to the Bay Ridge Ford Dealer Agreement, which purports to authorize Bay Ridge Ford to sell and service Ford vehicles from its location in Brooklyn.

26. Bay Ridge Ford Dealer Agreement is a "term" agreement; meaning, it continues for a set term that Ford elects to renew.

27. By letter dated October 26, 2020, Ford informed Bay Ridge Ford that it will not approve the dealership for a continuing agreement.

28. In the October 26, 2020 letter, Ford stated that Bay Ridge Ford's Sales Efficiency ("SE") was below 100% and that its Ford Service Index score was not 100% of the group score. For these reasons, Ford stated that it would not approve Bay Ridge Ford for a continuing agreement.

29. SE is a ratio of a dealer's total sales to expected sales. To meet Ford's requirements, dealer's actual sales must be at 100% or exceed expected sales.

30. SE calculates expected sales, by vehicle, by multiplying industry registrations in each Competitive Segment within a "DEALER'S LOCALITY," which the Bay Ridge Ford Dealer Agreement defines as "the locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility for COMPANY PRODUCTS."

31. Ford assigns each dealer a DEALER'S LOCALITY, which consists of census tracts defined by the U.S. Census Bureau. Census tracts are typically assigned to the closest dealer, with certain exceptions to account for road networks and natural barriers (such as rivers and lakes).

32. Whenever a new motor vehicle is bought or leased, that vehicle is registered with the state at the customer's address. This registration data is compiled by census tracts and used by manufacturers like Ford for several purposes, including measuring sales performance.

33. Ford also divides the universe of motor vehicles into individual vehicle class segments (e.g., mid-sized sedans, small SUVs, and so on) and luxury and non-luxury brands (e.g., BMW, Mercedes, and Audi on one hand and Toyota, Honda, Ford, and Chevrolet on the other).

34. Using this registration and segmentation data, Ford measures a dealer's sales performance by SE. SE is a fraction, expressed as a percentage, where the numerator is all of a dealer's retail sales, wherever made, and the denominator is the dealer's "expected" sales – as dictated according to Ford's unreasonable and inequitable criteria and assumptions:

$$SE = \frac{\text{Actual Sales}}{\text{``Expected Sales''}} \times 100$$

35. "Expected Sales," the SE denominator, is calculated by applying Ford's statewide market share, in each vehicle segment, to all of the competitive retail motor vehicle registrations in the DEALER'S LOCALITY:

**"Expected" Sales =**

**Ford's Statewide Market Share in  x  Segment Registrations in DEALER'S LOCALITY
(repeated for each vehicle segment in which Ford competes)**

36. Ford's SE metric does not consider local market conditions and consumer preferences. At best, SE adjusts for one consumer preference—segment popularity (i.e., small sedans, SUVs, full-size pickup trucks, and so on)—but does not consider any other local market condition or consumer preference.

6

37. Moreover, the definitions, assumptions, criteria, and targets that underlie SE compare disparate dealers in an arbitrary and inequitable manner, Dealers across New York face different markets, different clienteles, and different local challenges. Ford ignores these local market differences in SE.

38. Ford's SE metric is functionally equivalent to GM's RSI calculation, which has been ruled unlawful by the New York Court of Appeals.

39. Like GM, which required a dealer to achieve a 100 (or 100%) RSI, Ford requires its dealers to achieve 100% SE.

40. Like GM's RSI, Ford's SE adjusts only for segment popularity. Thus, SE suffers from the same infirmities that the *Beck* court found with RSI including, without limitation, that SE fails to consider local brand popularity, the level of competition, biases for or against import brands, demographics, and so forth. *See Beck Chevrolet Co., Inc. v. General Motors, LLC*, 27 N.Y.3d at 391-92 ("GM essentially argues that it can set a standard that misrepresents external market forces. However, measuring the dealer's performance against a market the dealer never faces is not reasonable or fair within the meaning of section 463(2)(gg). It is the equivalent of holding a dealer in New York State to a standard based on the market of a foreign country or another state without appropriate adjustments for local differences. In both cases, the dealer is measured against a sales landscape that is not within the dealer's experience.").

41. Nor does SE take into consideration how rampant brokering affects a dealer's sales. In *Alfredo's Foreign Cars, Inc. d/b/a Larchmont Chrysler Jeep Dodge v. FCA US LLC*, Case No. FMD 2019-01 (N.Y. Dep't of Motor Vehicles Div. of Safety and Business Hrg's Nov. 29, 2019) *aff'd*, Dkt. No. 44175, N.Y. Dep't of Motor Vehicles Admin. Appeals Brd. (June 29, 2021), the DMV concluded that the manufacturer's failure to account for brokering was another ground for

ruling its sales performance metric unlawful. ("The issue is not a question of legality. Such brokers are generally legal entities of New York and are authorized to do business in the State. Rather, the question is whether they impact local market conditions, and if so, does the current MSR sales metric adequately account for them? There is substantial evidence in the record indicating that such brokering was occurring and was a significant local condition in the market.")

42. Bay Ridge Ford's DEALER'S LOCALITY is in an area with high brokering activity. The prevalence of brokering in the New York metropolitan area is well known and well-documented. *See Crain's New York Business*, Low-overhead auto brokers are changing the game for traditional dealerships (April 23, 2018) (the "Brokering Article").

43. The Brokering Article discusses the growth of the brokerage business in the outer boroughs of New York City, stating, "Brokers can thank carmakers for at least some of that growth. Manufacturers have embraced incentive programs for dealerships in recent years. Those include aggressive 'stairstep' programs, in which hitting escalating targets results in bigger bonuses. The incentive payments have become integral to how dealers structure their prices."

44. Bay Ridge Ford is located in Brooklyn, where brokering is extremely prevalent.

45. As described above, Ford calculates a dealer's SE score by applying Ford's statewide market share by segment to the competitive registrations in a DEALER'S LOCALITY. The SE calculation therefore assumes a dealer has a competitive advantage in its assigned DEALER'S LOCALITY. However, brokers eliminate any competitive advantage a dealer has in its particular market by providing satellite sales locations for dealers outside the market to sell vehicles into the market.

46. SE is unlawful under Section 463(2)(gg) of the Dealer Act, which provides that a franchisor, may not use an unreasonable, arbitrary or unfair sales or other performance standard in determining Bay Ridge Ford's compliance with its franchise agreement.

47. Ford's customer satisfaction metric is also unlawful.

48. Ford purports to survey all new car and truck purchasers having a sale reported within 35 days of the vehicle sale date with a valid email address or postal mailing address.

49. Depending on the question on the survey, the possible answers range from yes/no to a range of answers from "Excellent," "Very Good," "Good," "Fair," or "Poor."

50. For yes/no questions, Ford calculates scores by dividing the total number of "Yes" responses to that question by the total number of responses to that question. For example, if a question received 12 responses, with 10 being "Yes" and 2 being "No," then the score for that question is 83%.

51. For questions with possible answers ranging from "Excellent" to "Poor," Ford scores the answers as follows: Excellent = 100; Very Good = 75; Good = 0; Fair = -75; and Poor = -100.

52. Ford then calculates a "Sales Index" and a "Service Index" but taking six questions for sales and six questions for service. These questions are scored using the Excellent to Poor scoring described above.

53. Ford adds the scores for the six questions and divides them by six to determine the Dealer's Sales Index score.

54. Ford requires dealers to achieve Index scores equal to "Group" averages.

55. Each Ford dealer is assigned to a particular Region. Bay Ridge Ford is assigned to Ford's New York Region, which includes dealers located in New York and Pennsylvania.

9

56. Each Ford dealer is placed into one of the following Groups: Small, Medium, and Large. Ford determines Group assignments as follows:

| Group | The Dealers that make up % of Region's Sales |
|---|---|
| Small | 20% |
| Medium | 35% |
| Large | 45% |

57. Bay Ridge Ford is in the "Medium" Group, which includes dealers located throughout the State of New York.

58. Much like SE, Ford's groupings fail to take into account local factors that may affect how customers score Bay Ridge Ford on customer satisfaction surveys.

59. The following are Bay Ridge Ford's CSI scores: Dealer Satisfaction 4.32 (vs. Dealer Group of 4.66); Sales Experience Index 4.44 (vs. Dealer Group of 4.85); and Service Experience Index 4.25 (vs. Dealer Group of 4.68).

60. The difference in Bay Ridge Ford's CSI scores from Dealer Group range from -0.34 to -0.43. There is no material or statistically significant difference in Bay Ridge Ford's scores versus the Group average.

**COUNT I – VIOLATION OF § 463(2)(v)**
**(THE DEALER ACT)**

61. Bay Ridge Ford restates and incorporates the forgoing allegations.

62. Ford has violated § 463(2)(v) by using a customer satisfaction index or other system to measure a customer's degree of satisfaction with Bay Ridge Ford that was designed and implemented in an unfair and inequitable manner.

63. Sales Index and Service Index are "customer satisfaction indexes or other systems" within the meaning of § 463(2)(v).

64. Pursuant to § 463(2)(v), Ford has the burden of demonstrating the fairness and equity of its systems both in design and implementation.

65. Section 469(1) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and Bay Ridge Ford seeks: (a) declaratory and injunctive relief declaring Ford's customer satisfaction metrics are unlawful under the Dealer Act, enjoining Ford from using Sales Index, Service Index, or any similar customer satisfaction metric to evaluate Bay Ridge Ford's customer satisfaction and requiring Ford to provide Bay Ridge Ford with a continuing dealer agreement; (b) Bay Ridge Ford's attorney's fees and costs; and (c) any other relief Bay Ridge Ford may have a right to receive under New York law.

**COUNT II – VIOLATION OF § 463(2)(gg)**
**(THE DEALER ACT)**

66. Bay Ridge Ford restates and incorporates the forgoing allegations.

67. Ford has violated § 463(2)(gg) of the Dealer Act by using SE to evaluate Bay Ridge Ford's sales performance, because SE is an unreasonable, arbitrary and unfair sales performance metric.

68. Section 463(2)(gg) of the Dealer Act prohibits manufacturers from using, "any unreasonable, arbitrary, or unfair sales or other performance standard in determining a franchised motor vehicle dealer's compliance with a franchise agreement."

69. For the reasons set forth in *Beck* and *Larchmont*, SE is an unreasonable, unfair and arbitrary sales performance standard prohibited by Section 463(2)(gg) of the Dealer Act.

11

70. Because Ford has relied on SE to evaluate Bay Ridge Ford's sales performance, it has unlawfully refused to provide a continuing dealer sales and service agreement to Bay Ridge Ford and instead has only offered a term agreement.

71. Section 469(1) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and Bay Ridge Ford seeks: (a) declaratory and injunctive relief against Ford declaring SE unlawful under the Dealer Act, prohibiting Ford from using SE to evaluate Bay Ridge's performance and requiring Ford to provide Bay Ridge Ford with a continuing dealer agreement; (b) Bay Ridge Ford's attorney's fees and costs; and (c) any other relief Bay Ridge Ford may have a right to receive under New York law.

## COUNT III – VIOLATION OF § 466(1)
## (THE DEALER ACT)

72. Bay Ridge Ford restates and incorporates by reference each of the allegations set forth above as if fully rewritten here.

73. Section 466(1) of the Dealer Act prohibits franchisors from "directly or indirectly [imposing] unreasonable restrictions on the franchised motor vehicle dealer relative to…compliance with subjective standards."

74. Ford's requirement that Bay Ridge Ford achieve a certain SE or Index score is an unreasonable restriction requiring it to comply with unreasonable, subjective standards.

75. Section 469(1) of the Dealer Act establishes a private right of action for violations of the Dealer Act, and Bay Ridge Ford seeks: (a) declaratory and injunctive relief against Ford declaring Ford's SE and customer satisfaction metrics unlawful under the Dealer Act, prohibiting Ford from using SE, Sales Index, Service Index, or any similar customer satisfaction metric to evaluate Bay Ridge Ford's performance and requiring Ford to provide Bay Ridge Ford with a

continuing dealer agreement; (b) Bay Ridge Ford's attorney's fees and costs; and (c) any other relief Bay Ridge Ford may have a right to receive under New York law.

## DEMAND FOR JURY TRIAL

Bay Ridge Ford demands a jury trial on all issues so triable.

**WHEREFORE**, Bay Ridge Ford demands entry of a judgment against Ford:

A. For declaratory and injunctive relief under Counts I-III;

B. For an award of reasonable attorneys' fees, costs, and disbursements incurred in connection with this action, in amounts to be determined as authorized by Section 469(1) of the Dealer Act; and

C. For such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 31, 2023

ARENTFOX SCHIFF LLP

By: /s/ Russell P. McRory
Russell P. McRory
Michael P. McMahan
Daisy M. Sexton
Charles A. Gallaer
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
(212) 484-3900

*Attorneys for Plaintiff Plante Consulting LLC*